EDMUND A. HAYES, complainant,

*v.*

ANNA THOMAS et al., defendants.

[Decided August 7th, 1924.]

**Conveyances—Bill to Quiet Title—Complainant in Possession— Defendants' Claim of Undivided One-half Interest—Administrator's Deed—Possible Equities.**

On final hearing.

*Mr. Irving Hoagland,* for the complainant.

*Mr. Ephraim Cutter,* for the defendants.

BUCHANAN, V. C.

Complainant's bill is to quiet title. Defendants' answer disputes complainant's right to maintain the bill, by denying that complainant is in possession of the lands in question. The lands in question are building lots, and it appears from the evidence that subsequent to the deed to complainant, he has in fact been in actual possession by his agents or licensees, who have stored and maintained lumber thereon. This possession has been peaceable, and all the other statutory jurisdictional requisites are admitted.

My determination on the preliminary question is therefore that complainant is entitled to maintain his bill.

Defendants lay claim by their answer to ownership of an undivided one-half share of the lands, and have also filed counter-claim for partition of the tract between themselves and complainant.

Complainant claims title to sole ownership of the lands in question (the lands remaining of the original tract after mesne conveyances of parts thereof), by deed of January

19th, 1922, from the executors and trustees under the will of Marianna W. Manning, deceased, which deed conveyed to complainant all the right, title and interest in and to these lands of which the said Marianna Manning died seized.

The main issue is as to the extent of Marianna Manning's ownership at the time of her death. Admittedly she was, and complainant now is, seized of at least an undivided one-half. Admittedly if she was seized of the whole, complainant is now sole legal owner of the whole, and defendants have no legal title to any part. The determination of this issue rests upon the effect of four deeds, to wit:

1. William H. Quackenboss, administrator of Laura N. Ford, deceased, to Anna Thomas, dated September 19th, 1910: recorded October 17th, 1910.

2. Anna Thomas et ux. to Marianna W. Manning, dated September 19th, 1910: recorded January 18th, 1911.

3. William H. Quackenboss, administrator of Laura N. Ford, deceased, to Anna Thomas, dated September 19th, 1910: recorded February 8th, 1911.

4. Anna Thomas et ux. to Marianna W. Manning, dated April 27th, 1912; recorded April 29th, 1912.

Prior to these deeds, admittedly Laura N. Ford and defendant Anna Thomas were each seized of an undivided half. Each of the four deeds expresses conveyance of an undivided half.

The first of these deeds recited a sale by the administrator under an order of the Middlesex orphans court, and a subsequent order of that court confirming the sale and directing the execution of the deed. Under the provisions of *P. L. 1910 ch. 73; 4 Comp. Stat. p. 4688 § 39*, there should have been "endorsed on or added to" this deed of conveyance a certificate to the effect "that the deed contains a recital setting forth the names of all the complainants or plaintiffs and defendants named in the decree, execution or order" by virtue of which the sale was made. Such certificate was omitted from this deed, and complainant contends that the deed was therefore ineffective to convey. With this contention I am unable to agree.

49

The statute referred to does not expressly or by implication make a deed invalid for want of the certificate. To warrant any such construction of the statute, the legislative intent should be quite clearly implied. The mere fact that no other penalty—no penalty whatever—is provided for non-compliance, is certainly insufficient to justify such an addition by implication.

Section 83 of the Orphans Court act empowers the orphans court to order the administrator to sell lands. Section 85 of that act empowers that court to confirm the sale and to direct the administrator to execute a good and sufficient conveyance of the lands so sold. Section 94 provides, *inter alia,* that any deed or conveyance made in pursuance of the order of confirmation shall be good and valid, and that such deed shall vest in the purchaser the estate of the intestate. These are the statutory provisions which determine whether or not title passed under the deed in question.

It may be noted that section 94 of the Orphans Court act also directs that certain recitals be made in such administrator's deed, but also provides that omission of these recitals shall not invalidate the deed. The provisions as to recitals are merely directory; they relate to the form of the deed, but do not affect its substance. *Stryker* v. *Vanderbilt, 27 N. J. Law 68.* Moreover, in refutation of the contention that the omission of the statutory certificate renders the deed invalid, reference may be made to the opinion of Chief-Justice Beasley, speaking for the court of errors and appeals, in *Meyer* v. *Patterson, 28 N. J. Eq. 239,* which holds that a sheriff has no authority to appoint by parol a special deputy to make a sale, and that a sale so made is invalid where immediately and directly attacked, but proceeds with the positive statement that "the sale would have transferred good title if not attacked directly and immediately in this way;" the title could not be collaterally attacked.

Whether or not title passed under the deed now in question depends therefore, under section 94 of the Orphans Court act above mentioned, upon whether or not it was made "in pursuance of the order of the court confirming such

sale." No evidence of such order of confirmation was produced at the hearing. The deed recites such order of confirmation, but there is, at least, doubt that such recital is *prima facie* evidence of the fact. *Baeder* v. *Jennings, 40 Fed. Rep. 199.* However, counsel states that such order of confirmation was duly made, and leave may be given, under the rules, to supply this record evidence, which may be done by a certified copy of the order, under section 93 of the Orphans Court act.

Assuming, then, that the evidence of the order of confirmation is duly supplied, the deed which we have been considering passed a legal title in an undivided half of the premises, to Anna Thomas, which added to the undivided half she already owned, gave her the whole.

Deed No. 2, from Anna Thomas and her husband to Marianna W. Manning, then vested in the latter an undivided half, leaving the other half in Anna Thomas.

Deed No. 3, between the same parties as deed No. 1, purports to convey an undivided half. It contains a recital, as follows: "This conveyance being made in order to comply with the law (*N. J. P. L. 1910 ch. 73 p. 109*), and in lieu of the former conveyance bearing even date herewith, and recorded in book 463 of deeds, at page 37, &c., in the Middlesex county clerk's office, and which said conveyance omitted the certificate required by said act and supplied hereon."

The legal effect of this deed as a conveyance of any title to the premises, was, of course, *nil*, in view of the fact that deed No. 1 had operated already to pass title to all of the intestate's estate. It left the title to the property precisely as it was after the execution of deed No. 2.

Deed No. 4 is between the same parties as deed No. 2, and purports to convey an undivided half. It contains this recital: "The undivided one-half of said lands, hereby conveyed, is the same conveyed to the said Anna Thomas by William H. Quackenboss, administrator of Laura Ford, deceased, by deed dated September 19th, 1910, and recorded in said [Middlesex county] clerk's office, February 9th, 1911, in book 468 of deeds, at page 190"—to wit, deed No. 3.

It seems clear, therefore, that deed No. 4 conveyed nothing, since it purported to convey what deed No. 3 conveyed, and deed No. 3 conveyed nothing.

Legally, then, after these four deeds, the title was vested one-half in Mrs. Thomas and one-half in Marianna W. Manning. Concededly there was no change thereafter up to the time of Marianna W. Manning's death, in so far as the premises now in question are concerned (which are only a part of the tract thus owned by Mrs. Thomas and Miss Manning as tenants in common, they having sold off some lots prior to Miss Manning's death).

Under legal principles, therefore, Mrs. Thomas has good title to an undivided half of the present tract. Are there any equities estopping her from asserting the same as against complainant?

I am unable to discover any. The burden of proof would, of course, be on complainant to establish them.

Complainant testifies that at the time he took his deed he had no idea that Mrs. Thomas had, or claimed, any interest in the lots; that although he had been told by his grantors (the executors and trustees under Miss Manning's will) that there was some uncertainty as to her title, so that they would give deed only for "all her right, title and interest," he believed the uncertainty arose at a point much earlier in the chain of title; that his conclusion as to the four deeds, which we have heretofore particularly considered, was that the title to the whole was thereby vested in Miss Manning, and that any other result therefrom never even occurred to him.

I believe this testimony, although I confess that the evidence of these four deeds would have suggested to my mind the probability, or, at least, the possibility, that the intent of the parties thereto was that Mrs. Thomas and Miss Manning should each own a one-half interest. It is, of course, clear that they regarded (as did complainant) deed No. 1 as void, and it might well be held that their acts, showing that they had such belief, gave rise to complainant's belief—were a representation to him that deed No. 1 was void. Such a representation would seem to be as to a conclusion of law,

but assuming that it was a representation of fact, and assuming that Mrs. Thomas' acts in connection with these four deeds constituted negligence which would suffice to raise an equitable estoppel against her in favor of complainant, if the other necessary elements of such estoppel were present; the difficulty is that the other necessary elements are not present.

Complainant does not testify, nor is it even argued in his behalf, that he would not have purchased Miss Manning's interest at the price he paid, if he had known that it was only an undivided half share. The evidence is rather to the contrary, for he testified that he bought it by way of speculation, because he thought he could make some money out of it at the price; he paid only $300 for Miss Manning's interest, and the uncontradicted testimony is that the tract as a whole (twenty lots) were worth $200 each at the time of complainant's purchase and at the present time. Even if this testimony were discounted seventy-five per cent., it is evident that complainant has not been damaged by his purchase.

Moreover, there was evidence of record, of which complainant is chargeable with notice, that Mrs. Thomas claimed a one-half interest in these lands after the four deeds mentioned, for she and Miss Manning together sold off twenty-two lots of the original forty-two and executed general warranty deeds therefor, which were of record at the time of complainant's purchase. I think complainant would be bound by constructive notice of these deeds, under the recording acts, since they operated to reduce the area of the lands as conveyed to Miss Manning; but he testifies that he had the title searched before he bought, and his agent who made the search must necessarily have had actual knowledge of these deeds in order to determine how much land would be conveyed to complainant on his purchase, and complainant is, of course, bound by such knowledge or notice of his agent.

It results that (upon the supplying of the record evidence of the order confirming sale hereinbefore mentioned) there must be a decree on the complainant's bill establishing the

title in him and in Miss Thomas as tenants in common of the premises in undivided one-half shares.

It likewise results that defendant is entitled to decree for partition on her counter-claim. The evidence shows the property susceptible of actual partition, and decree will be made accordingly.

Each party being successful in part, no costs will be awarded either.